***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of Deputy Commissioner Baddour.
 *********** RULING ON MOTION
Plaintiff did not appear at 9:00 a.m. on June 1, 2011 for oral argument in this matter before the Full Commission. Plaintiff appeared at the location for Full Commission hearings at 1:30 p.m. on June 1, 2011, at which time he was informed that argument in this matter had concluded. On June 2, 2011, Plaintiff filed what the Full Commission interprets as a motion for a new hearing before the Full Commission. In his motion, Plaintiff asserts that the most recent *Page 2 
correspondence he had received from the Commission regarding the date and time of the Full Commission hearing in this matter indicated that the hearing was to take place at 1:30 p.m. on June 1, 2011.
This matter was originally scheduled for oral argument before the Full Commission on May 19, 2011 at 9:00 a.m. Oral argument was subsequently continued to June 1, 2011 at the request of Defendants by an Order filed by Commissioner Cheatham on or about April 14, 2011. That Order indicated that the matter would be heard at 1:30 p.m. However, a Full Commission calendar for June 1, 2, 15 and 28, 2011 mailed to the parties reflected that oral argument in this matter was scheduled for June 1, 2011 at 9:00 a.m. Upon recognizing the discrepancy between the calendar mailed to the parties and the Order filed on or about April 14, 2011, an Amended Order was filed on or about April 18, 2011 stating that the correct time for the hearing was 9:00 a.m. Copies of the calendar and both Orders were mailed to Plaintiff at his last known address as well as one other address associated with Plaintiff's name, although some of those documents were returned to the Commission as undeliverable.
As of May 26, 2011, no brief to the Full Commission had been received by Plaintiff. As a result, correspondence was sent to Plaintiff via electronic mail stating, "Oral argument before the Full Commission in the above referenced matter is scheduled for June 1, 2011 at 9:00 a.m." and informing Plaintiff that he would not be permitted to present oral argument at the hearing before the Full Commission unless he filed a brief with both the Full Commission and counsel for Defendants by 12:00 p.m. on May 27, 2011. Plaintiff responded to that correspondence via electronic mail sent to Commissioner Cheatham on the morning of May 27, 2011. The logical conclusion to be drawn from Plaintiff's correspondence of May 27, 2011 is that he received the May 26, 2011 correspondence listing the date and time for the hearing. *Page 3 
Based on the foregoing, the Full Commission hereby DENIES Plaintiff's motion for a new hearing before the Full Commission.
 *********** EVIDENTIARY MATTER
On its own Motion, pursuant to Rule 701 of the Workers' Compensation Rules of the North Carolina Industrial Commission, the Full Commission hereby ORDERS that the Form 26A Employer's Admission of Employee's Right to Permanent Partial Disability, which is contained in the Commission's file for this matter, and which was agreed to by the parties on October 22, 2008 and approved by the Industrial Commission on October 24, 2008, be made a part of the evidence of record in this matter.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between Plaintiff and Defendant-Employer at all relevant times.
3. The North Carolina League of Municipalities is the carrier on the risk.
 *********** EXHIBITS
The following exhibits were admitted into evidence: *Page 4 
 (a) Stipulated Exhibit 1: Medical Records (attached to the deposition of Dr. Gwinn)
 (b) Stipulated Exhibit 2: Letter from Dr. Gwinn Responding to Written Questions
 *********** ISSUES (a) Whether Defendants have rebutted the Parsons presumption by showing that Plaintiff's right sided symptoms are more likely than not unrelated to his admittedly compensable low back injury?
 (b) If Defendants have not rebutted the Parsons presumption, to what benefits, is Plaintiff entitled, if any?
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 42 years old. On January 29, 2007 Plaintiff began working for Defendant-Employer as a Lead Equipment Operator in the Public Works. Plaintiff's duties in that position involved managing a crew of employees who performed street maintenance, concrete and asphalt repair, and tree trimming.
2. Plaintiff sustained an admittedly compensable injury to the left side of his back on January 15, 2008 when he was shoveling asphalt and experienced low back pain on his left side radiating into his left leg. At some point thereafter, Plaintiff began experiencing right-sided pain, *Page 5 
however, it is unclear when that pain began. Plaintiff believes that the right-sided pain began three or four months after the shoveling incident of January 15, 2008.
3. Dr. Michael Gwinn, a physical medicine and rehabilitation doctor at Carolina Back Institute, first saw Plaintiff on February 28, 2008. Plaintiff presented with low back pain radiating to the left buttock and posterior thigh. After that date, Dr. Gwinn again examined Plaintiff on June 2, 2008 and July 14, 2008 before releasing him at maximum medical improvement on August 11, 2008. Plaintiff was assigned a three percent (3%) permanent partial impairment rating to his back. On October 22, 2008, the parties entered into a Form 26A Agreement for payment of that rating. The Form 26A Agreement was approved by the Commission on October 24, 2008.
4. Plaintiff's testimony regarding the onset of his right-sided pain appears to be somewhat contradictory. At one point during the hearing before the Deputy Commissioner, Plaintiff stated that his right-sided pain began a few months after his initial injury. However, later in the hearing, in response the Deputy Commissioner's question, "so there was a pretty long period of time then between when you stopped having pain on the left side and when you started having pain on the right side?" Plaintiff stated, "Oh, yes, about a year."
5. Although Plaintiff testified that he started treating with Dr. Gwinn for his right side in April 2008, Dr. Gwinn testified, based on the medical records relating to his treatment of Plaintiff, that Plaintiff first indicated that he was experiencing right-sided pain on November 17, 2008. On December 12, 2008, Plaintiff underwent right-sided facet joint steroid injections at L4/5 and L5/S1. When Dr. Gwinn examined Plaintiff on January 7, 2009, Plaintiff complained of pain across the low back, but not leg pain. On April 1, 2009, Plaintiff again reported low back pain radiating into the right buttock and thigh. On June 8, 2009, Plaintiff continued to complain *Page 6 
of right leg radiating pain, and at Plaintiff's visit with Dr. Gwinn on October 27, 2009, he complained of low back pain and pain radiating into the right buttock and thigh.
6. Plaintiff's medical records from April 1, 2009 and June 8, 2009 indicate that Plaintiff had taken on additional jobs, and the June 8, 2009 note states that Plaintiff's "back has been hurting more" since taking on additional work. Plaintiff operated his own landscaping business in addition to working in the lawn and garden department of Home Depot.
7. At the hearing before the Deputy Commissioner, Plaintiff testified that approximately one year had passed between the time that he stopped having left-sided pain and the time he started having right-sided pain.
8. While Plaintiff testified that he missed work and had to leave work early on several occasions due to his right-sided pain, this testimony was contradicted by the testimony of Defendant-Employer's Public Works Operations Manager, Forrest Jones. Mr. Jones also testified that he was unaware of any complaints by Plaintiff or inability on the part of Plaintiff to carry out any of his job duties since his January 15, 2008 injury. Mr. Jones also indicated that Plaintiff's job had never been changed in order to accommodate any restrictions.
9. Plaintiff's testimony that he missed work and had to leave work early on several occasions due to his right-sided pain was also contradicted by the testimony of Kimberly Storey, Human Resources Specialist for Defendant-Employer. Ms. Storey reviewed Plaintiff's attendance records and indicated that Plaintiff's attendance had been good. Ms. Storey, who knew Plaintiff and spent about one day per week in the Public Works Department, was also unaware of any complaints made by Plaintiff that his back pain prevented him from working. She also did not know of any accommodations that had been made for Plaintiff by Defendant-Employer. *Page 7 
10. In response to written questions posed to him, Dr. Gwinn wrote a letter on February 8, 2010 stating in part:
 Mr. Tasaro has been treated in our office since 02/28/08. He reported that he injured his back while shoveling at work, and experienced low back and left leg pain. He has been treated conservatively with injections, physical therapy, and medication. He was treated by Dr. Keith prior to seeing me. At that time, he was having low back and left leg pain. He has most recently complained of right sided back pain radiating into the right leg. I am unable to say with certainty that his current symptoms are related to the job injury as the initial complaints were more left sided. It is possible that he may have reinjured or sustained a new injury.
11. Dr. Gwinn subsequently testified as follows:
 Q: Doctor, wouldn't you agree that, based upon the history given and the length of time from the original injury until he made the initial complaints to you, that the right-sided complaints are, more likely than not, not related to the original injury?
 A: Basically — I'm just going to kind of restate what I said here.
 Q: Yes, sir
 A: It says that — it's impossible to say where those symptoms come from if you've got numerous contributing factors. So what I said was it was possible he could have reinjured or sustained a new injury. He has underlying degenerative changes, and any type of lifting activity could aggravate or cause a new injury. So it's impossible to put your finger on. But it's more likely that if you have the same symptom ongoing from the date of injury, that that symptom would be related. Like if it were ongoing left leg pain, it would have been more likely related than if the symptoms change and become right sided.
 Q: So would you agree, then, because the symptoms changed and became right-sided, it's more likely not related to the original injury? *Page 8 
 A: It would be more likely not directly related in that it didn't continue on from the time of the injury. Unless something changed.
12. The Full Commission finds, based upon the preponderance of the evidence in view of the entire record, that Plaintiff's right-sided complaints, for which Dr. Gwinn first started treating him on November 17, 2008, are not related to his compensable injury of January 15, 2008.
 ***********
The foregoing findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to his low back as a result of a specific traumatic incident arising out of and in the course of his employment with Employer-Defendant on January 15, 2008. N.C. Gen. Stat. § 97-2(6).
2. The general rule under Parsons (the Parsons presumption) is that an employee has the benefit of a presumption that any medical treatment is directly related to the compensable injury where the medical treatment is for the same condition or same body part as the original compensable injury. Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d. 867 (1997). "The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury." Perez v. American Airlines/AMRCorp., 174 N.C. App. 128, 135, 620 S.E.2d 288, 292 (2005).
3. In Reinninger v. Prestige Fabricators, Inc.,136 N.C.App. 225, 523 S.E.2d 720, (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement which was approved by the Commission and thereby constituted an award of the Commission pursuant to N.C. Gen. Stat. § 97-82. In the instant case, *Page 9 
as the Commission approved the parties' Form 26 Agreement, Plaintiff is entitled to a presumption that the treatment he received from Dr. Gwinn for his right-sided back and leg complaints beginning on November 17, 2008 is causally related to Plaintiff's January 15, 2008 left-sided back injury. However, Defendants have rebutted this presumption by proving that the medical treatment provided by Dr. Gwinn to Plaintiff for his right-sided complaints is not directly related to Plaintiff's compensable left-sided injury.Parsons v. Pantry, Inc., supra.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is not entitled to further medical compensation.
2. Defendants shall pay the costs due the Commission.
This the ___ day of July, 2011.
 S/______________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/______________ PAMELA T. YOUNG CHAIR
 S/______________ CHRISTOPHER SCOTT *Page 10 
COMMISSIONER *Page 1